# ℒAW 553-PA-ARB-eps 4/23

**RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE**
**(WITH ARBITRATION PROVISION)**

12/09/2024

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| HENRY RAFAEL CORNIEL MARTINEZ<br>2020 W PHILADELPHIA ST APT 1W<br>YORK, PA 17404<br>YORK | N/A | STETLER DODGE CHRYSLER JEEP RAM<br>1405 Roosevelt Ave<br>York, PA 17404 |
| Cell: (203)645-2825 | Cell: N/A | |
| Email: henryrafael13@hotmail.com | Email: N/A | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2024 | DODGE HORNET | N/A | ZACPDFCW1R3A14672 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural   ☐ _____ N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $0.00 is |
|---|---|---|---|---|
| 6.29 % | $ 10,828.09 | $ 45,599.19 | $ 56,427.28 | $ 56,427.28 |

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ 182 (84) _____ Mos.

ZURICH GAP
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

### Your Payment Schedule Will Be:
*(e) means an estimate*

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 182 | $ 310.04 | BI-WEEKLY    beginning    12/23/2024 |
| N/A | $ N/A | N/A |
| | | N/A |

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

## If you do not meet your contract obligations, you may lose the vehicle.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____    Co-Buyer Signs X _____ N/A

Buyer Signs X _____    Co-Buyer Signs X _____ N/A    *LAW 553-PA-ARB-eps 4/23 v1   Page 1 of 5*

## ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

**1 Cash Price**

| | | |
|---|---|---|
| Vehicle | $ | 29,471.00 |
| Accessories and Installation | $ | N/A |
| Government Taxes | $ | 618.66 |
| Vehicle Delivery | $ | N/A |
| to Z SHIELD  for Z SHIELD | $ | 1,099.00 |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| | $ | 31,188.66 (1) |

**2 Total Downpayment =**

Trade-In 2023 JEEP COMPASS
(Year) (Make) (Model)

Trade-In 3C4NJDFNXPT533239
(VIN)

| | | |
|---|---|---|
| Gross Trade-In Allowance | $ | 22,000.00 |
| Less Pay Off Made By Seller to FIRST COMMONWEALTH BANK | $ | 34,774.00 |
| Equals Net Trade In | $ | -12,774.00 |
| + Cash | $ | 1,500.00 |
| + Other N/A | $ | N/A |
| + Other N/A | $ | N/A |
| + Other N/A | $ | N/A |
| (If total downpayment is negative, enter "0" and see 4H below) | $ | 0.00 (2) |

**3** Unpaid Balance of Cash Price (1 minus 2)  $ 31,188.66 (3)

**4** Other Charges Including Amounts Paid to Others on Your Behalf

**A** Cost of Optional Credit Insurance Paid to Insurance Company or Companies

| | | | | | |
|---|---|---|---|---|---|
| Life | Term N/A | $ | N/A | | |
| Disability | Term N/A | $ | N/A | $ | N/A |

**B** Other Optional Insurance Paid to Insurance Company or Companies

| | | | |
|---|---|---|---|
| (Describe) N/A | Term N/A | $ | N/A |
| (Describe) N/A | Term N/A | $ | N/A |

**C** Official Fees Paid to Government Agencies

| | | |
|---|---|---|
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |

| | | |
|---|---|---|
| **D** Optional Gap Contract | $ | 799.00 |
| **E** Government Taxes Not Included in Cash Price | $ | N/A |

**F** Government License and/or Registration Fees

| | | |
|---|---|---|
| LICENSE AND/OR REGISTRATION FEES | $ | 43.00 |

**G** Government Certificate of Title Fees

| | | |
|---|---|---|
| (includes $ N/A security interest recording fee) | $ | 67.00 |

**H** Other Charges (Seller must identify who is paid and describe purpose)

| | | |
|---|---|---|
| to FIRST COMMONWEALTH  for Prior Credit or Lease Balance | $ | 11,274.00 |
| to STETLER DODGE CHRYSL for DOCUMENT FEE | $ | 464.00 |
| to ZURICH  for SERVICE CONTRACT | $ | 1,741.00 |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to N/A  for N/A | $ | N/A |
| to DEALERTRACK  for ONLINE REG FEE | $ | 22.53 |
| to N/A  for N/A | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 14,410.53 (4) |

| | | |
|---|---|---|
| **5** Amount Financed (3 + 4) | $ | 45,599.19 (5) |
| **6** Finance Charge | $ | 10,828.09 (6) |
| **7** Total of Payments-Time Balance (5 + 6) | $ | 56,427.28 (7) |

Buyer Signs X _____  Co-Buyer Signs X _____ N/A _____

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
### Optional Credit Insurance

☐ Credit Life:  ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability:  ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

### Other Optional Insurance

☐ N/A  N/A
Type of Insurance  Term

Premium $ N/A

Description of Coverage N/A
N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

☐ N/A  N/A
Type of Insurance  Term

Premium $ N/A

Description of Coverage N/A
N/A

Insurance Company Name N/A
N/A

Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A  N/A
Buyer Signature  Date

X N/A  N/A
Co-Buyer Signature  Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

LAW 553-PA-ARB-eps 4/23 v1  Page 2 of 5

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our

option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semitrailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give false or misleading information during credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
      If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
      If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

Buyer Signs X _____ Co-Buyer Signs X _____ N/A _____          LAW 553-PA-ARB-eps 4/23 v1   Page 3 of 5

Case 1:26-bk-00591-HWV   Doc 13-1   Filed 04/22/26   Entered 04/22/26 16:14:35   Desc
Exhibit   Page 3 of 8

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance. maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

## 4. WARRANTIES SELLER DISCLAIMS

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

## 5. Used Car Buyers Guide.

**The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

## 6. SERVICING AND COLLECTION CONTACTS

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

## 7. RIGHT TO RECEIVE STATEMENT OF ACCOUNT

**Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.**

## 8. ADDITIONAL RIGHTS

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

## 9. APPLICABLE LAW

Federal law and the law of the state of Pennsylvania apply to this contract.

## 10. NEGATIVE CREDIT REPORT NOTICE

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Buyer Signs X _____ Co-Buyer Signs X _____ N/A _____        *LAW 553-PA-ARB-eps 4/23 v1*   Page 4 of 5

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____N/A_____ . Year __N/A__ . SELLER'S INITIALS ___N/A___

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.     Buyer Signs **X** _____     Co-Buyer Signs **X** ___N/A___

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

**See the rest of this contract for other important agreements.**

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Buyer Signs **X** _____ Date __12/09/2024__ Co-Buyer Signs **X** ___N/A___ Date __N/A__

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs **X** _____ Date __12/09/2024__ Co-Buyer Signs **X** ___N/A___ Date __N/A__

Buyer Printed Name HENRY RAFAEL CORNIEL MARTINEZ     Co-Buyer Printed Name N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A _____ Title N/A _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** ___N/A___ _____ Address _____ N/A _____

Seller signs STETLER DODGE CHRYSLER JEEP RAM     Date __12/09/2024__  By **X** _____ Title MANAGER

---

Seller assigns its interest in this contract to **Jonestown Bank**     (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse     ☒ Assigned without recourse     ☐ Assigned with limited recourse

Seller STETLER DODGE CHRYSLER JEEP RAM

By **X** _____     Title **MANAGER**

---

**LAW** FORM NO. 553-PA-ARB-eps (REV 4/23)
©2023 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

*LAW 553-PA-ARB-eps 4/23 v1*   Page 5 of 5

**CONSENT TO CONDUCT TRANSACTIONS ELECTRONICALLY USING ELECTRONIC RECORDS AND SIGNATURES**

You have indicated that you wish to receive, sign, or transmit documents relating to your Transaction with us electronically. We are required by law to give you certain information "in writing" – which means you are entitled to receive it on paper. We need your consent in order to provide you this information electronically instead. We also need your general consent to use electronic records or signatures in our Transaction with you.

In this Consent, the words "we," "us," and "our" mean (i) the DEALERSHIP from whom you are purchasing or leasing your motor vehicle (the **"DEALERSHIP"**) and (ii) any assignee of the financing contract or lease agreement, or the original creditor on a loan agreement (the **"FINANCING INSTITUTION"**). The words "you" and "your" mean the person giving consent as well as any co-applicants and co-owners of any product or service we provide to the person giving consent as part of this Transaction. **"Transaction"** means your application for credit, the retail installment sales contract, loan agreement, or lease agreement providing for the purchase or lease of a motor vehicle, and the review, execution, and delivery of the documents related to your purchase or lease. It also includes the purchase of all related products and services provided to you and described in the Communications. **"Communication(s)"** means each disclosure, notice, retail installment sales contract, loan agreement, lease agreement, undertaking, fee schedule, periodic statement, record, document, or other information we provide to you, or that you sign or submit or agree to at our request, in connection with the Transaction.

1. **Your Consent.** You (i) agree that any of the Communications we provide to you, or that you sign or agree to at our request, may be in electronic form; and (ii) consent to receiving any of the Communications we provide to you via email, text message, or other electronic medium. We may also use electronic signatures and obtain them from you on any Communication, even if we provide you the Communications in paper form.

**The Communications may be presented, executed, and delivered at the DEALERSHIP, or, for eligible online transactions, via our Signature and Document Delivery Service and Website.**

We may always, in our sole discretion, provide you with any Communications on paper, even if you have authorized electronic delivery. Sometimes the law, or our agreement with you, requires you to give us a written notice. You must still provide these notices to us on paper, unless we tell you how to deliver the notice to us electronically.

2. **How to Withdraw Consent**. If you decide to withdraw consent before you complete the Transaction, you may do so by selecting the "Withdraw Consent" option available on each page of the electronic signature process. The "Withdraw Consent" option will either appear on the left side of the screen, or under the action menu at the upper left corner of the screen. If you withdraw consent before the Transaction is complete, you will be required to restart the Transaction.

Your withdrawal of consent with respect to this Transaction does not affect any other consent you have given us at any other time to use electronic records and signatures, and it does not affect the legal effectiveness, validity, or enforceability of the electronic Communications that were provided to you before your withdrawal became effective.

3. **How to Update Your Contact Information**. It is your responsibility to provide us with accurate and complete e-mail address, mobile/cellular telephone number, and other contact information at the time of your Transaction and after the time of your Transaction, when your contact information changes. To update your information during the Transaction, please notify our representative assisting you with your Transaction; to update your contact information after the time of your Transaction, please notify your Financial Institution.

4. **Hardware and Software Requirements**. To receive or retain electronic Communications, you must have access to:

**Browser Options:**
This **Signature and Document Delivery Service and Website** will support the most Current Version of the major desktop, laptop, and tablet browsers. ***MOBILE PHONE BROWSERS ARE NOT SUPPORTED AT THIS TIME.***

**Read and Display Requirements:**
Our system works with any Current Version of Adobe Reader® that views and prints PDF documents.

**Printer or Storage Space:**
You will need access to a printer or sufficient storage space to retain the Communications.

You must also have an active email address and SMS-enabled mobile/cellular telephone to use the Signature and Document Delivery Service and Website.

For transactions you complete on our hardware, we will supply any additional required hardware and software.

By "Current Version," we mean a version of the software that is currently supported by its publisher. From time to time, we may offer services or features that require the Internet browser you are using to be configured in a particular way, such as permitting the use of JavaScript or cookies. If we detect that the Internet browser you are using is not properly configured, we will provide you with a notice and advice on how to update your configuration. We reserve the right to discontinue support of a Current Version of software if, in our sole opinion, it suffers from a security flaw or other flaw that makes it unsuitable for use with your Transaction.

If our hardware or software requirements change, and that change would create a material risk that you would not be able to access or retain electronic Communications, we will give you notice of the revised hardware or software requirements. Continuing to use this service after receiving notice of the change is reaffirmation of your consent.

5. **Paper Copies.**

a. **Transactions Completed Using Our Hardware and Software**

For Transactions completed using our hardware and software (**"Type I Transactions"**), we will use electronic signatures obtained from you for Communications and we will provide those Communications to you in paper form at the time of your Transaction. For Type I Transactions, we will tell you that you will be receiving a paper copy of the Communications at the time of your Transaction.

b. **Transactions Completed Using Your Hardware and Software**

For Transactions completed using your hardware and software to access the Signature and Document Delivery Service and Website (**"Type II Transactions"**), we will use electronic signatures obtained from you for Communications and we will provide those Communications to you at the time of your Transaction. For Type II Transactions, we will tell you that you will be receiving an electronic copy of the Communications at the time of your Transaction.

For Type II Transactions, we <u>will not</u> send you a paper copy of electronic Communications unless you

request it, as provided below, or we otherwise deem it appropriate to do so.  For Type II Transactions, you can obtain a paper copy of any Communication we provide to you electronically by printing it yourself or by requesting your **DEALERSHIP** provide you with a paper copy at the time of your Transaction.  Such requests for paper copies to your **DEALERSHIP** can be made at the time of your Transaction or up to fifteen (15) days after the date of your Transaction.  After this time (15 days after the date of your Transaction), you can request a copy of any Communication by contacting your **FINANCING INSTITUTION.**  There is no charge associated with requesting a paper copy of a Communication we sent you electronically.

6. **Retaining Copies of Electronic Communications.** We encourage you to print or download, for your records, a copy of all electronic Communications.  This ESIGN Consent disclosure will be a part of the Communications when you print, download a copy, or are otherwise provided a paper copy by us at the time of your Transaction.

7. **Termination/Changes.** We reserve the right, in our sole discretion, to (i) provide you with Communications in paper or electronic form, as described above; (ii) discontinue the provision of your Communications electronically; or (iii) to terminate or change the terms and conditions on which we provide your Communications to you electronically.  The Communications that we provide to you electronically will be available to you electronically for fifteen (15) days after the date (a) your Transaction is completed and (b) we provide access to the Communications to you via the Signature and Delivery Service and Website.  After this time, if you wish to receive a copy of the Communications, you must request a paper copy from your **FINANCING INSTITUTION.**

**By checking the box, you confirm that (i) you have reviewed and agree to be bound by the terms of the ESIGN Consent; (ii) you are consenting to the use of electronic records and signatures in connection with this Transaction; and if we provide the Communications to you electronically, you are (a) consenting to receive your Communications through the use of the Signature and Document Delivery Service and Website; (b) confirming that you have access to the hardware and software described above; (c) confirming that you are able to receive and review electronic records; and (d) confirming that you have an active email account, SMS-enabled mobile/cellular telephone, and the ability to access, view, and retain PDF files.  You are also confirming that you are authorized to, and do, consent on behalf of all of your co-applicants and co-owners of any product or service we provide to you as part of this Transaction.**

**By checking the box, you also agree that any electronic records signed by using the Signature and Document Delivery Service and Website are signed at our business premises.  Any Communications that require our signature are completed and binding on us only when we receive and execute them.**

**By checking the box, you agree that the sale or lease of a motor vehicle is complete at the time and place that we deliver the motor vehicle per the agreement below.  You and we agree that we will deliver the motor vehicle to you by making the motor vehicle available to you to take possession of it at our place of business once you and we have completed execution of the applicable Communications that require signature.  We may agree to help you arrange transportation of the motor vehicle to another place of your choosing after we have delivered it to you at our place of business; however, you acknowledge and agree that: (i) our helping you with transportation of the vehicle in this way is at your request, as your agent, and for your convenience; and (ii) any such transportation of the vehicle that occurs is after the sale or lease is complete and after it was delivered by us at our place of business.**

**By checking the box you also agree that (i) the Signature and Document Delivery Service and Website are strictly designed for use on desktop, laptop, and tablet computing devices and (ii) _THE SIGNATURE AND DOCUMENT DELIVERY SERVICE AND WEBSITE ARE NOT CURRENTLY DESIGNED FOR AND SHOULD NOT BE USED ON A MOBILE PHONE BROWSER._**